NOT FOR PUBLICATION

RECEIVED
FEB 15 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.C.I. *on behalf of* M.I., <br><br> Plaintiff, <br><br> v. <br><br> NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL BOARD OF EDUCATION, <br><br> Defendant. | Civ. No. 17-1887 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff M.C.I. ("Plaintiff") (ECF Nos. 7, 8) and Defendant North Hunterdon-Voorhees Regional High School Board of Education ("Defendant") (ECF No. 9). Both Motions are opposed. (ECF Nos. 14, 15, 16, 17.) The Court has decided the motions based on the parties' written submissions and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Court: (1) affirms the ALJ's finding that Plaintiff's notice was untimely and (2) remands this matter for further consideration of whether Plaintiff is entitled to any reimbursement for her unilateral private placement.

## BACKGROUND

Plaintiff M.C.I., mother of M.I., brings suit against the North Hunterdon-Voorhees Regional High School Board of Education alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and corollary provisions of New Jersey law. Plaintiff claims that Defendant failed to provide her daughter, M.I., with a free and appropriate

1

public education ("FAPE") in the least restrictive environment, as required by the IDEA, and that she is entitled to tuition reimbursement for a unilateral private school placement.

I.      Individuals with Disabilities Education Act

The IDEA requires states receiving federal education funding to ensure that students with disabilities receive a FAPE. 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1); *see also Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 425–26 (3d Cir. 2013). A state satisfies the FAPE requirement by providing "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982). At its core, the IDEA requires school districts to evaluate students who may be considered disabled under the statute and develop and administer an Individualized Education Program ("IEP") for any eligible student. *See* 20 U.S.C. § 1414; *see also S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 264 (3d Cir. 2003). The student's IEP must address their "level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010) (citing 20 U.S.C. § 1414(d)(1)(A)).

In New Jersey, the IEP is developed by a school district's Child Study Team—composed of a school psychologist, a learning disabilities teacher-consultant, and a school social worker—along with the student's parent(s) or guardian(s), a teacher familiar with the student, and other specified school personnel. N.J.A.C. 6A:14-2.3(k)(2). A parent who disagrees with a school district's proposed IEP may challenge the IEP in a due process hearing, which is adjudicated by an Administrative Law Judge ("ALJ"). N.J.A.C. 6A:14-2.7; *Lascari v. Bd. of Educ.*, 560 A.2d 1180, 1183–84 (N.J. 1989). The ALJ's final decision may then be appealed by any aggrieved party through a civil action in state or federal court. 20 U.S.C. § 1415(i)(2).

## II. Case History & Procedural Background

M.I. is a high-school aged student from Clinton Township, New Jersey. (Pl.'s Statement of Undisputed Material Facts ("SMF") ¶ 1, ECF No. 7-2; Def.'s SMF ¶ 1, ECF No. 9-1.) As a child, she attended public school in the Clinton School District, which serves students in kindergarten through eighth grade. (Pl.'s SMF ¶ 2.) Following eighth grade, Clinton Township public school students attend high school in the district overseen by the North Hunterdon-Voorhees Regional High School Board of Education ("the NHV District"). (Pl.'s SMF ¶ 2; Def.'s Resp. to Pl.'s SMF ¶ 2, ECF No. 15-1; Def.'s SMF ¶ 3; *see also M.I. o/b/o M.I v. North Hunterdon/Voorhees Regional High Bd. of Educ.* ("ALJ Op."), OAL No. 15963-16, Final Decision, at 2 ¶ 1 (Mar. 8, 2017), ECF No. 9-13.)

In third grade, M.I. was diagnosed with dyslexia and Attention Deficit Hyperactivity Disorder ("ADHD"), determined by the Clinton School District to be eligible for special education services under the IDEA, and designated to receive services under the "specific learning disability" classification, *see* N.J.A.C. 6A:14-3.5(c)(12). (Pl.'s SMF ¶ 1; Def.'s Resp. to Pl.'s SMF ¶ 1; Def.'s SMF ¶ 2.) Pursuant to a settlement agreement with M.I.'s parents, the Clinton School District agreed to an out-of-district placement for M.I. at the Craig School, a private day school, beginning in 2011. (Pl.'s SMF ¶ 3; *see also* ALJ Op. at 2 ¶ 2.) M.I. continued attending the Craig School and receiving special education services there through eighth grade, ending in the spring of 2016. (Pl.'s SMF ¶¶ 3–4; Def.'s SMF ¶ 2.) M.I. was provided with an Orton-Gillingham based program, assistive technology, and in-class supports. (Pl.'s SMF ¶ 3.)

During M.I.'s eighth grade year, Plaintiff and Defendant began a transition plan for M.I. to attend high school in the NHV District beginning in the 2016–2017 school year. (Pl.'s SMF ¶¶ 4–7; Def.'s Resp. to Pl.'s SMF ¶¶ 6–7.) On January 19, 2016, a meeting was held with Plaintiff, members of the Clinton School District child study team, and a representative of the

3

NHV District's child study team for M.I.'s annual IEP review and to begin planning for her transition to high school. (Pl.'s SMF ¶ 7; Def.'s SMF ¶ 6; ALJ Op. at 2 ¶ 3.) Plaintiff completed the NHV District's high school enrollment form[1] and signed a permission form for a NHV District representative to observe M.I. during a class at the Craig School.[2] (Pl.'s SMF ¶ 7.)

At the meeting, the Clinton School District proposed an IEP dated January 19, 2016, which continued to classify M.I. under "specific learning disability." (*See* Katz Cert., Ex. B, January 2016 IEP, ECF No. 7-4; Moore Cert., Ex. D, January 2016 IEP, ECF No. 9-7.)[3] Plaintiff signed the January 19, 2016 IEP, giving her consent to implement it immediately. (Katz Cert., Ex. B; Moore Cert., Ex. D.) The NHV District proposed that beginning in fall 2016 M.I. would receive special education and related services in public high school consisting of English taught by a special education teacher in a resource center setting; supplemental instruction in reading, writing, and math; in-class support for her other academic classes; and other modifications to her instructional program. (Def.'s SMF ¶ 7; ALJ Op. at 3 ¶ 4.) Plaintiff agreed to visit North Hunterdon High School to explore the transition. (Pl.'s SMF ¶ 8.)

In March 2016, Plaintiff and M.I. met with members of the NHV District child study team, toured North Hunterdon High School, and received information about the proposed program for M.I. (Pl.'s SMF ¶ 10; Publicover Cert., Ex. A.) It is disputed whether, as part of that visit, Plaintiff advised Defendant that the proposed IEP was unacceptable because it failed to

---

[1] The purpose and effect of this form are unclear, as "students cannot enroll in the School District until July 1 of each year . . . ." (Publicover Cert. ¶ 4, ECF No. 15-2.)
[2] The timing of the observation is disputed. Mary Patricia Publicover, Director of Special Services for the NHV District, attests the observation happened on December 10, 2015, before the January 2016 meeting. (Publicover Cert. ¶ 5.) Plaintiff attests that she did not give permission for the observation until January 2016. (M.C.I. Cert. ¶ 2, ECF No. 7-5.)
[3] In the IEP section on how the student's disability affects her involvement and progress in the general education curriculum, the IEP reads "other health impaired," *see* N.J.A.C. 6A:14-3.5(c)(9) (listing ADHD), although M.I. remained classified under "specific learning disability," *id.* 6A:14-3.5(c)(12) (listing dyslexia). (Pl.'s SMF ¶ 8; Def.'s Resp. to Pl.'s SMF ¶ 8.)

provide M.I. with FAPE. (*Compare* Pl.'s SMF ¶ 10, *with* Def.'s Resp. to Pl.'s SMF ¶ 10.) M.I. was evaluated for Read180 during the visit. (Publicover Cert. ¶ 6; M.C.I. Cert. ¶ 5.) She was found to be ineligible for Read180, and the results of the evaluation were forwarded to the Clinton School District in early April 2016. (Publicover Cert. ¶ 6; Publicover Cert., Ex. B.) However, the results were not sent to M.I.'s parents until August 2016. (M.C.I. Cert. ¶ 5; *see* Publicover Cert., Ex. B.) In May 2016, the NHV District also sent Plaintiff an updated proposed course schedule for M.I. (Publicover Cert. ¶ 6.)

In May 2016, Plaintiff submitted a signed enrollment contract for M.I. to attend ninth grade at the Pennington School ("Pennington"), a private, out-of-district school.[4] (Pl.'s SMF ¶ 11; Def.'s SMF ¶ 9; *see also* ALJ Op. at 3 ¶ 10.) The record is not clear as to when Plaintiff made the first deposit to Pennington to secure a spot for M.I. (*Compare* Pl.'s SMF ¶ 11 (10% deposit made in May 2016) *and* Def.'s SMF ¶ 10 (10% deposit made in May 2016), *with* Moore Cert., Ex. B, ECF No. 9-5 (contending Plaintiff made first payment July 30, 2016) *and* Moore Cert., Ex. E, ECF No. 9-8 (documenting that Pennington had not received any deposit as of June 16, 2016); *see also* ALJ Op. at 3 ¶ 10.)

On July 7, 2016, Plaintiff received a revised draft IEP from Defendant dated July 5, 2016. (Pl.'s SMF ¶ 13; Def.'s Resp. to Pl.'s SMF ¶ 13; Def.'s SMF ¶ 12.)[5] Among the changes from M.I.'s existing IEP, the draft re-classified M.I. under "other health impaired" and included the

---

[4] Plaintiff began her application to Pennington in November 2015. (Def.'s SMF ¶ 4; Moore Cert., Ex. B; Moore Cert., Ex. C, ECF No. 9-6). M.I. was admitted to Pennington in March 2016. (Moore Cert., Ex. B; *see also* ALJ Op. at 3 ¶ 5.)

[5] Defendant represents that Exhibit F to the Moore Certification is the July 2016 IEP. (*See* Def.'s SMF ¶ 12.) However, that IEP is dated December 21, 2016. (Moore Cert., Ex. F, ECF No. 9-9.) Additionally, the Moore Certification represents that Exhibit F is a true copy of Defendant's IEP dated January 19, 2016, which likewise appears incorrect. (Moore Cert. ¶ 7.) Defendant did provide the Court with a copy of the July 2016 IEP as Exhibit D to the Publicover Certification, submitted with its opposition to Plaintiff's Motion for Summary Judgment. (Publicover Cert., Ex. D, ECF No. 15-2.)

results of her April 2016 Read180 evaluation, finding that she was reading at grade level. (*See* Publicover Cert., Ex. D.) The NHV District's Director of Special Services, Ms. Publicover, acknowledges being aware that Plaintiff was questioning the appropriateness of the proposed program throughout the spring and summer of 2016. (Publicover Cert. ¶ 8.) For example, Plaintiff forwarded the NHV District a letter dated July 14, 2016 from the Craig School recommending Pennington as an appropriate placement for M.I. (*See id.*; *see also* M.C.I. Cert., Ex. E, ECF No. 7-5.)

On July 19, 2016, Plaintiff emailed Defendant to explain that she would be exercising procedural safeguards to dispute the IEP. (Pl.'s SMF ¶ 14; Def.'s Resp. to Pl.'s SMF ¶ 14; M.C.I. Cert. ¶ 7.) Also on July 19, 2016, Plaintiff submitted a parental request for due process hearing (the "Due Process Petition"). (Pl.'s SMF ¶ 15; Def.'s SMF ¶ 13; Moore Cert., Ex. G, ECF No. 9-10; Katz Cert., Ex. A.) Both the July 19th email and the Due Process Petition rejected the proposed IEP. (Pl.'s SMF ¶¶ 14–15; Def.'s SMF ¶ 13; Moore Cert., Ex. G; Katz Cert., Ex. A. *But see* ALJ Op. 4 ¶ 11 ("Petitioner did not reject the IEP for the 2016-2017 academic year.").) Additionally, the Due Process Petition signaled that "[t]he parent seeks tuition reimbursement for the placement of her child in an out of district private school . . . ."[6] (Katz Cert., Ex. A at 3; Moore Cert., Ex. G at 3.) On July 30, 2016, Plaintiff made a deposit of $9,500 to Pennington, almost 20% of the cost of tuition.[7] (M.C.I. Cert. ¶ 10; ALJ Op. at 3 ¶ 10; Moore Cert., Ex. B.)

Although Plaintiff requested a mediation conference conducted by the Office of Special Education Programs in place of a district-led resolution session (Katz Cert., Ex. A at 2; Moore

---

[6] Defendant asserts that "Plaintiff's petition for due process did not seek reimbursement for tuition at The Pennington School." (Def.'s SMF ¶ 14.) While the Due Process Petition did not name Pennington, it did express intent to seek reimbursement for a unilateral private placement. (*See, e.g.*, Moore Cert., Ex. G. at 3.)

[7] Defendant was unaware of this tuition payment until discovery in the administrative action below. (Def.'s SMF ¶ 16.)

Cert., Ex. G at 2), she nevertheless agreed to attend a resolution session with the NHV District on August 15, 2016 (Pl.'s SMF ¶ 17; Def.'s SMF ¶ 17). The parties largely dispute what transpired at the resolution session, except that Defendant agreed to contact the Craig School and the parties discussed the possibility of M.I. attending the Craig High School. (*Compare* Pl.'s SMF ¶¶ 17–19, *with* Def.'s Resp. to Pl.'s SMF ¶¶ 17–19 *and* Def.'s SMF ¶ 17; *see* M.C.I. Cert. ¶¶ 11–13; *see also* Publicover Cert. ¶ 10.) On August 22, 2016, Defendant filed an Answer to the Due Process Petition, denying any liability for private school tuition reimbursement. (Def.'s SMF ¶ 18.) In late August, the NHV District attempted to contact the Craig School, but could not set up a conference call until its school year began in September. (*Compare* Pl.'s SMF ¶ 20, *with* Def.'s Resp. to Pl.'s SMF ¶ 20; *see* M.C.I. Cert., Ex. A; *see also* Publicover Cert. ¶ 10.)

M.I. did not attend North Hunterdon High School's first day of school on August 24, 2016. (Publicover Cert. ¶ 11.) On September 1, 2016, Plaintiff's counsel sent Defendant an email announcing that M.I. would be attending Pennington because the NHV District's proposal failed to provide FAPE, stating "[w]e expect the District to reimburse the parents for the costs of the school . . . ." (Moore Cert., Ex. H, ECF No. 9-11; *see also* M.C.I. Cert. ¶¶ 16, 18; Publicover Cert. ¶ 13.) Pennington held orientation for ninth grade students on September 6, 2016. (Def.'s SMF ¶ 20.) That day, the NHV District sent a school bus to transport M.I. to the Craig High School, which it considered the appropriate "stay put" placement. (*See* Pl.'s SMF ¶ 24; *see also* Def.'s Resp. to Pl.'s SMF ¶ 24; M.C.I. Cert. ¶ 17; Publicover Cert. ¶¶ 9, 12.) On September 7, 2016, the NHV District responded to the September 1st letter, disputing the sufficiency of the notice of unilateral placement, asserting that the IEP provided FAPE, and proposing dates for another IEP meeting. (Def.'s SMF ¶ 21; Moore Cert., Ex. I, ECF No. 9-12.)

In the administrative action below, after a settlement conference and prehearing conference, Defendant moved for summary decision on December 20, 2016. (ALJ Op. at 2; Pl.'s

7

SMF ¶ 25; Def.'s SMF ¶ 22.) Plaintiff filed opposition in January 2017 (Pl.'s SMF ¶ 26), and on March 8, 2017 ALJ Michael Antoniewicz issued a summary decision holding that Plaintiff failed to give proper notice of intent to unilaterally place M.I. in a private school at public expense and therefore was not entitled to any tuition reimbursement. (*See generally* ALJ Op.) Plaintiff filed the instant federal Complaint on March 21, 2017. (ECF No. 1.) Pursuant to the Court's scheduling order (ECF No. 6), the parties filed cross-motions for summary judgment by December 8, 2017.[8] (ECF Nos. 7, 9.) Plaintiff seeks reversal of the ALJ's summary decision, and Defendant seeks to have it upheld.

## LEGAL STANDARD

In a case appealing an ALJ's decision under the IDEA, the district court applies a "modified version of *de novo* review." *Munir*, 723 F.3d at 430 (quoting *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006)). The court "must make its own findings by a preponderance of the evidence . . . [and] must also afford 'due weight' to the ALJ's determination." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198–99 (3d Cir. 2004) (quoting *Rowley*, 458 U.S. at 206) (citations omitted); *see also* 20 U.S.C. § 1415(i)(2)(C) ("[T]he [district] court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.").

A district court must consider the ALJ's factual findings *prima facie* correct, and "if the court fails to adopt those findings, it must explain its reasons for departing from them." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 241 (3d Cir. 2009). The due weight standard thus gives

---

[8] Although the vehicle for review of the ALJ's decision is a motion for summary judgment, Plaintiff is essentially appealing that decision. *See, e.g., D.L. ex rel. J.L. v. Springfield Bd. of Educ.*, 536 F. Supp. 2d 534, 535 (D.N.J. 2008) (citing *M.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002)).

8

courts discretion to consider facts beyond the administrative record. *See Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995) ("[I]n determining whether to admit the proffered additional evidence . . . [the court should determine whether] the evidence [would] assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved."). The court exercises plenary review over the ALJ's legal conclusions. *Id.*; *H.L. o/b/o V.L. v. Marlboro Twp. Bd. of Educ.*, 2017 WL 5463347, at *4 (D.N.J. Nov. 14, 2017). The burden of proof in a proceeding to receive reimbursement is placed on the party seeking relief. *L.E.*, 435 F.3d at 391–92.

## ANALYSIS

"If parents believe that the school district is not providing a FAPE for their child, they may unilaterally remove [her] from the school, enroll [her] in a different school, and seek tuition reimbursement for the cost of the alternative placement." *Munir*, 723 F.3d at 426. They may be entitled to reimbursement if a court finds that the proposed IEP was inappropriate and the private placement was appropriate under the IDEA. *See Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993); *see also H.L.*, 2017 WL 5463347, at *2 n.2 (citing 20 U.S.C. §1412(a)(10)(C)); N.J.A.C. 6A:14-2.10(b). However, parents who unilaterally withdraw their child from public school and place her in private school without the district's consent "do so at their own financial risk." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374 (1985); *Munir*, 723 F.3d at 426. "The statute requires parents to give written notice of their 'intent to enroll their child in a private school at public expense.'" *H.L.*, 2017 WL 5463347, at *7 (citing 20 U.S.C. § 1412(a)(10)(C)(iii)(I)); *see also* N.J.A.C. 6A:14-2.10. A court may reduce or deny reimbursement if a parent fails to notify the IEP team that she is rejecting the IEP proposal and intends to enroll her child in a nonpublic school ten (10) business days prior to the child's removal from the public school. *W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, 602 F.

9

App'x 563, 567 (3d Cir. 2015); 20 U.S.C. § 1412(a)(10)(C)(iii); N.J.A.C. 6A:14-2.10(c)(1)–(2). Reimbursement may also be reduced or denied if the judge finds the parents acted unreasonably. 20 U.S.C. § 1412(a)(10)(C)(iii)(III); N.J.A.C. 6A:14-2.10(c)(4).

It is undisputed that Plaintiff failed to timely notify Defendant of her intent to unilaterally place M.I. at Pennington. As the ALJ below noted (*see* ALJ Op. at 8 (citing prior administrative decisions)), and as Third Circuit precedent advises, M.I. was considered removed when Plaintiff signed the Pennington enrollment contract in May 2016. *See, e.g.*, *W.D.*, 602 F. App'x at 567, 567 n.3; *H.L.*, 2017 WL 5463347, at *7 n.7. At the earliest, Plaintiff rejected the IEP and gave notice of intent to seek tuition reimbursement in the Due Process Petition on July 19, 2016. The Court therefore affirms the ALJ's finding that Plaintiff failed to provide timely notice under 20 U.S.C. § 1412(a)(10)(C) and N.J.A.C. 6A: 14-2.10(c). Based on this chronology, the ALJ determined that Plaintiff was not entitled to tuition reimbursement because she (i) made a unilateral placement without giving proper notice and (ii) acted unreasonably. (ALJ Op. at 7–9.) The ALJ granted summary decision in favor of Defendant.

The instant appeal requires this Court to review the ALJ's decision that, on the basis of deficient notice alone, Plaintiff is not entitled to any tuition reimbursement. Plaintiff first argues that the failure to notify within ten days was excused under one of two exceptions: the district prevented the timely notification and/or M.I. would have suffered serious emotional harm had she complied with the notice requirement, or, in the alternative, attended the NHV District. Plaintiff further argues that the ALJ erred in treating the failure to notify as a *per se* bar to reimbursement, rather than a discretionary factor for reducing or denying reimbursement. Defendant counters that the ALJ correctly determined that Plaintiff failed to reject the district's proposed placement and timely notify the Board of intent to seek private school tuition.

Defendant further argues that none of the exceptions to the notice requirement apply here and that Plaintiff's failure was a proper basis for the total denial of tuition reimbursement.

Plaintiff also moves for a declaration that M.I. was denied a FAPE and that M.I.'s placement at Pennington was appropriate under the IDEA, issues that were not reached by the ALJ. Defendant contends that genuine issues of material fact exist as to whether the Board provided M.I. with a FAPE and whether M.I.'s placement at Pennington was appropriate. As these issues were not reached by the ALJ below, the Court declines to consider these arguments.

I. Applicability of Notice Exceptions

Under New Jersey regulations corresponding to the IDEA, cost of reimbursement shall not be reduced or denied if the parent failed to provide notice because "[t]he school prevented the parent from providing such notice[.]" N.J.A.C. 6A:14-2.10(d)(3). Additionally, the court or ALJ in its discretion may decline to reduce the reimbursement if compliance with the notice requirement would "likely result in physical or serious emotional harm to the student[.]" *Id.* 6A:14-2.10(d)(2). Plaintiff argued both exceptions before the ALJ below (*see* ALJ Op. at 7–8), and reprises those arguments before this Court (*see* Pl.'s Br. at 10–14, ECF No. 7-1).

The record before the Court does not support either exception. First, Defendant did not prevent Plaintiff from providing notice. To meet the exception, Plaintiff would need to demonstrate how Defendant prevented Plaintiff from giving notice before May 2016, when she enrolled M.I. with Pennington. The record indicates that the NHV District was available, responsive, and in regular communication with Plaintiff between January and September 2016. Additionally, Plaintiff signed Clinton School District's January 2016 IEP, which included preliminary suggestions for M.I.'s high school program, allowing it to be implemented immediately. The record does not suggest Plaintiff expressed any reticence about that IEP or Defendant's ability to provide FAPE at the January meeting, despite having an opportunity to

11

reject the proposal and having already begun to consider an alternative placement with Pennington. During the North Hunterdon High School site visit, Plaintiff did not outright reject the District's placement, despite being present in the school with appropriate personnel and thus having an opportunity to reject the program. That Plaintiff may have expressed concerns was legally insufficient. It is true that Plaintiff could not review or reject the updated draft IEP until she had seen it, and that Defendant did not produce a draft IEP until July, after M.I. was officially enrolled. But to read Defendant's compliance with its own deadlines as an act of prevention stretches the regulation beyond its plain meaning. Defendant did not prevent Plaintiff from rejecting the IEP and providing timely notice of intent to place M.I. in a private program.

Second, Plaintiff has not provided sufficient evidence to show that compliance with the notice requirement would have likely exposed M.I. to serious emotional harm. For one thing, Plaintiff argues an alternative reading of the exception, where the anticipated harm is tied to the public school placement itself, not compliance with the notice requirement. Entertaining that argument without deciding whether it is a viable reading of the regulation, Plaintiff still provides no expert opinion or evaluation of M.I. to support the base assertion that "placement in North Hunterdon-Voorhees Regional High School [sic] would likely result in serious emotional harm as the offered program was not sufficient to service M.I.'s specific learning disabilities." (Pl.'s Br. at 13.) Plaintiff's argument rests on supposition, suggesting that Defendant's failure to mirror the exact program M.I. received at the Craig School would be legally inappropriate and therefore seriously harmful. (*Id.* at 14.) Plaintiff does not cite a single exhibit in the record to support this argument; without any evidence to back up this significant claim, the Court cannot excuse the failure to provide sufficient notice on this basis.

II. <u>Equitable Analysis for Reducing or Denying Reimbursement</u>

As discussed above, reviewing courts must engage in an equitable analysis under the IDEA and New Jersey's corollary regulations to determine whether reimbursement *may* be reduced or denied. *H.L.*, 2017 WL 5463347, at *5 ("[T]he reviewing judge 'retain[s] discretion to reduce the amount of a reimbursement award if the equities so warrant . . . .'" (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009))). Although the Court affirms the ALJ's determination that M.I. was removed as soon as her Pennington enrollment contract was signed in May 2016, *see, e.g.*, *W.D.*, 602 F. App'x at 567, 567 n.3; *H.L.*, 2017 WL 5463347, at *7 n.7, this legal finding of removal should not *per se* control the equitable analysis of the parents' participation in the IEP process, *see H.L.*, 2017 WL 5463347, at *8–9 ("[I]t appears that the ALJ treated Plaintiffs' failure to adhere to the notice requirement as a categorical bar to Plaintiffs' reimbursement claim. . . . To the extent that the ALJ short-circuited the equitable analysis by concluding that Plaintiffs' failure to provide timely notice mandated the denial of Plaintiffs' claim for reimbursement, the ALJ ran afoul of the Supreme Court's instruction that reducing or denying a claim for reimbursement for lack of notice is a discretionary determination.").

Additionally, the Court rejects the ALJ's legal conclusion, reached without equitable analysis, that Plaintiff's behavior was so unreasonable as to bar any reimbursement (ALJ Op. at 7–9).[9] *See H.L.*, 2017 WL 5463347, at *8 (finding ALJ provided no explanation for finding of unreasonableness). Based on the record before the Court, this is not a case in which either party's

---

[9] Relying on Third Circuit precedent, the ALJ's opinion effectively collapsed two independent grounds for denying reimbursement, finding that the failure to provide notice was itself unreasonable on the facts presented. (*See* ALJ Op. at 7, 8 (citing *C.H.*, 606 F.3d at 72).) Yet, the statute and regulation carve out the notice requirement and a judicial finding of unreasonableness as separate grounds. 20 U.S.C. § 1412(a)(10)(C)(iii); N.J.A.C. 6A: 14-2.10(c). Moreover, in *C.H.*, the Third Circuit's decision did not rest exclusively on the failure to provide timely notice, but also on the fact that "[t]he Parents here have disregarded their obligation to cooperate and assist in the formulation of an IEP." *C.H.*, 606 F.3d at 72.

13

conduct evidences bad faith. The parents here were not obstructionist or uncooperative. *Cf. C.H.*, 606 F.3d at 64, 72. The record does not suggest that M.I.'s parents feigned interest in the NHV District's IEP while failing to disclose an unequivocal intent to remove their child from public school in favor of a preferred private placement.[10] Rather, in January, March, April, May, and July 2016, the parents attended IEP meetings, toured the public high school, subjected M.I. to a Read180 evaluation, reviewed a proposed course schedule, and cooperated with the NHV District in an effort to formulate an IEP. Plaintiff contends she repeatedly expressed her discontent with the proposed IEP, highlighting concerns about the change in M.I.'s classification and the pull-out resource room instruction for English. Even after filing the due process petition, Plaintiff mediated the IEP impasse with the NHV District. Similarly, it appears Defendant acted in good faith to respond to Plaintiff's concerns, but faced bureaucratic and communication barriers to taking the steps that Plaintiff repeatedly requested, such as forwarding M.I.'s Read180 evaluation results and consulting the Craig School to explore recommendations for adapting M.I.'s existing IEP for a high school setting. "This clearly connotes an inability of both sides to agree, not the arbitrary refusal of one side to come to the table." *Upper Freehold Reg'l Bd. of Educ. v. T.W.*, 496 F. App'x 238, 244 (3d Cir. 2012); *id.* at 243, 243 n.3 ("To say that *Cape Henlopen* would apply to totally bar parents from reimbursement after negotiations reached an

---

[10] Reimbursing private school tuition may be a hollow remedy if students are barred from even enrolling in an appropriate placement until the IEP process reaches an impasse. The law could be read, instead, to allow for options to be pursued simultaneously, finding that "removal" is triggered not when an enrollment contract is signed but when the student begins attending a different program in earnest. The District of Maryland's interpretation in *Sarah M. v. Weast*, 111 F. Supp. 2d 695 (D. Md. 2000), suggests that very solution. That court found removal occurs under the IDEA ten business days from the beginning of the school year, or from when the child is physically placed in private school, whichever is first. *Id.* at 701. The Third Circuit has cited and considered this standard, but has yet to reach the same interpretation question. *W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, 602 F. App'x 563, 567 n.3 (3d Cir. 2015) ("[W]e do not need to go that far in this case . . . .").

14

impasse is to fault them for failing to agree to whatever the school district presents, whether justified or not.").

Contrary to the ALJ's factual determination (ALJ Op. at 4 ¶ 11), it appears Plaintiff rejected the IEP and notified the Board of her intent to seek tuition reimbursement for a private placement on July 19, 2016. At that time, although already legally removed from the district, M.I. was not actually attending any school. Moreover, the NHV District was aware that Plaintiff was questioning the proposed program throughout the spring and summer. (Publicover Cert. ¶ 8); *cf. W.D.*, 602 F. App'x at 568 n.4 ("[T]he record here reflects that W.D. engaged in an after-the-fact effort to excuse his inadequate notice by questioning the school district's proffered IEP, and, given the totality of the record, that is sufficient both to explain and sustain the ALJ's determination."). To the extent that the policy behind the notice requirement is to give districts an opportunity to resolve parents' concerns with the IEP and revise it to provide FAPE (*see* ALJ Op. at 8–9 (citing *C.H.*, 606 F.3d at 72)), it is not clear that Plaintiff's deficient notice justified a finding of unreasonable conduct. Plaintiff suggested the NHV District should consider an out-of-district placement with Pennington in July, gave notice of intent to seek tuition reimbursement on July 19, 2016, and gave specific notice of removal to Pennington on September 1, 2016; while M.I. had been formally removed for months, the ALJ should consider whether this late notice actually prejudiced the Board and whether the district was afforded adequate time to review and revise M.I.'s IEP. *See H.L.*, 2017 WL 5463347, at *8 ("[T]he ALJ did not explain the extent to which Defendant was prejudiced by receiving late notice of Plaintiffs' decision.").

The facts of this case favor remand for full consideration of some of the facts. The Court will remand to the ALJ to supplement his decision after holding an evidentiary hearing to consider disputed facts. Balancing the equities, the ALJ should consider whether Plaintiff is entitled to any reimbursement of tuition despite the failure to provide timely notice, and therein

15

potentially reach the questions of whether the Board's proposed IEP would provide M.I. with FAPE and whether Pennington was an appropriate placement.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted insofar as it seeks remand to conduct an evidentiary hearing and to determine whether the equities warrant any tuition reimbursement under these facts, but is otherwise denied. Defendant's Cross-Motion for Summary Judgment is granted insofar as it seeks affirmance of the ALJ's conclusion that notice was untimely, but is otherwise denied. An appropriate order will follow.

Date: ___2/15/18___  /s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.